DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Defendant-Appellant Antoine Scott has appealed from his convictions and sentence in the Summit County Court of Common Pleas. This Court affirms.
 I {¶ 2} On February 24, 2006, three individuals knocked and entered the apartment of Matthew Cirullo. Cirullo, who shared the apartment with his girlfriend Tiffany Stevens and his roommate Mark Vargo, was in the bathroom when Vargo let the individuals in the apartment. Stevens, upstairs in the bedroom, also was absent from the room at the time. William Lewis, Appellant, and another *Page 2 
man referred to only as "Matt" were later implicated as the three individuals who entered the apartment.
 {¶ 3} At some point after Vargo allowed the three men entry, an altercation occurred. Lewis beat Cirullo and Appellant went upstairs to the bedroom that Stevens was in. Stevens explained that Appellant threw her on the bed, took her cell phone, and searched the room. Appellant was able to find a handgun belonging to Vargo. Appellant used the gun to coerce Stevens into handing over her wallet and then walked back downstairs where he threatened Cirullo with the gun. Stevens watched as Appellant and Lewis beat Cirullo. When she tried to escape, however, Appellant hit Stevens in the head with the gun and threw her onto the couch. At the end of this encounter, Appellant and Lewis forced Cirullo, Stevens, and Vargo into the bathroom, threatening to kill them if they called the police.
 {¶ 4} When Cirullo, Stevens, and Vargo finally exited the bathroom, Stevens went to the neighbor's door. The neighbor drove Stevens to her mother's house where Stevens sought comfort. After a short while there, she returned to the apartment accompanied by her neighbor and called the police from the neighbor's cell phone. Stevens was later able to pick both Lewis and Appellant out of separate photo arrays and identify them as two of her assailants. *Page 3 
 {¶ 5} Subsequently, a grand jury indicted Appellant for three counts of aggravated robbery in violation of R.C. 2911.01(A)(1)/(A)(3) with a firearm specification in violation of R.C. 2941.145 and one count of aggravated burglary in violation of R.C. 2911.11(A)(2). On August 14, 2006, a jury found Appellant guilty on all counts. The court sentenced Appellant to seven years in prison. Appellant has appealed his convictions in a timely manner and has raised one assignment of error for review.
 II Assignment of Error
"THE APPELLANT'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 6} In his sole assignment of error, Appellant has argued that his convictions were against the manifest weight of the evidence. This Court disagrees.
 {¶ 7} When considering a manifest weight argument, the Court:
 "[M]ust review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339-340.
A weight of the evidence challenge indicates that a greater amount of credible evidence supports one side of the issue than supports the other. State v. Thompkins (1997), 78 Ohio St.3d 380, 387. Further, when reversing a conviction *Page 4 
on the basis that the conviction was against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. Id. Therefore, this Court's "discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Martin (1983),20 Ohio App.3d 172, 175; see, also, Otten, 33 Ohio App.3d at 340.
 {¶ 8} Appellant was convicted of three counts of aggravated robbery. See R.C. 2911.01(A)(1)/(A)(3). R.C. 2911.01(A)(1)/(A)(3) provides as follows:
 "(A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code * * *, shall do any of the following: (1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it; * * * (3) Inflict, or attempt to inflict, serious physical harm on another."
Each of Appellant's aggravated robbery convictions were accompanied by convictions for firearm specifications pursuant to R.C. 2941.145. The firearm specification requires the court to impose an additional three year prison term upon any offender who, "had a firearm on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense." R.C. 2941.145(A). *Page 5 
 {¶ 9} Lastly, Appellant was convicted of one count of aggravated burglary. See R.C. 2911.11. R.C. 2911.11(A)(2) provides as follows:
 "(A) No person, by force, stealth, or deception, shall trespass in an occupied structure * * * when another person other than an accomplice of the offender is present, with purpose to commit in the structure * * * any criminal offense, if * * *: (2) The offender has a deadly weapon or dangerous ordnance on or about the offender's person or under the offender's control."
 {¶ 10} At trial, Appellant called Loleta Gill, an alibi witness, who testified that Appellant was with her during the incident on February 24, 2006. Appellant has now argued that the jury lost its way when it convicted him despite his alibi. Additionally, Appellant has claimed that all of the State's witnesses lacked credibility and that the jury erred in believing their testimony. Yet, when reviewing the record as a whole this Court cannot say that the jury clearly lost its way in convicting Appellant. See Often, 33 Ohio App.3d at 340.
 {¶ 11} The victims' testimony supports the jury's verdict. Stevens testified that she knew Appellant's co-defendant, Lewis, because she had met him before. As to Appellant, Stevens explained that she had never met him prior to his entering the apartment on February 24th, but the interaction between Stevens and Appellant on that day gave her ample opportunity to view Appellant. Stevens observed Appellant when he took her cell phone from her, threw her on the bed, forced her back downstairs, and hit her in the head with Vargo's gun. She later chose Appellant's picture from a photo array and identified him as her assailant. Cirullo testified that Lewis and the other assailant beat him while Appellant went *Page 6 
upstairs and returned with Stevens. Cirullo went on to state that Lewis, Appellant, and the third assailant took the victims' wallets, cell phones, and forced them into the bathroom before threatening to kill them. Cirullo, however, had a more difficult time identifying the suspects than did Stevens because the assailants repeatedly beat him and put him in a headlock during the encounter. Cirullo explained that he was unable to give detailed descriptions because much of his focus was on the gun rather than the face of his assailants and "because a lot of it is a blur."
 {¶ 12} Appellant has charged that the victims lacked credibility because they were drug dealers at the time of the incident. Indeed, Appellant has asserted that the victims delayed in contacting the police because they were attempting to hide contraband in their apartment before the police arrived. Although the record supports the allegation that the victims engaged in drug activity, that does not change the fact that a robbery and burglary occurred. The victims explained that they waited to call the police because they remained in the apartment's bathroom, under threat of death, for a period of time. Cirullo testified that he and Vargo did not call the police while Stevens was with her mother because they were in shock and because Lewis and Appellant had stolen both of their cell phones. Yet, upon Stevens' return the group promptly telephoned the police using the neighbor's cell phone. Furthermore, the State presented evidence beyond the victims' testimony. *Page 7 
 {¶ 13} Lewis, Appellant's co-defendant, also testified as to Appellant's involvement. Lewis stated that Appellant accompanied him to the apartment, used Vargo's gun to strike and threaten both Stevens and Cirullo, and took the gun and Stevens' cell phone with him upon leaving the apartment. Lewis further testified that he and Appellant sold the gun the next day to Lewis' cousin. Appellant has attacked Lewis' testimony because Lewis admitted to reporting a different version of the events to the police earlier in the investigation. Additionally, Appellant has asserted that Lewis had a strong motivation to lie because of his personal involvement in this case and in an unrelated case involving Appellant's alibi witness. While Appellant raises valid concerns, the jury had full knowledge of all of these details when it reached the decision in this case. On cross examination, Lewis admitted several times that his testimony differed from the statement that he gave to Detective Reilly during his investigation. The jury knew that Lewis' story had changed and chose to rely on the testimony he delivered at trial.
 {¶ 14} "[T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." State v.DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. Since the jury is in the best position to determine the credibility of the witnesses during trial, this Court will not substitute its own factual determinations for the jury's. State v. Crowe, 9th Dist. No. 04CA0098-M,2005-Ohio-4082, at ¶ 22. Consequently, this Court will not overturn the trial court's verdict on a manifest weight of the evidence challenge *Page 8 
only because the jury chose to believe certain witness' testimony over the testimony of others. Id.
 {¶ 15} The jury could have opted to believe Appellant's testimony and the testimony of his alibi witness, but it instead relied upon the State's witnesses. Based on the record, we cannot say that the jury lost its way or that the verdict created a manifest miscarriage of justice. See Often, 33 Ohio App.3d at 340. Appellant's sole assignment of error lacks merit.
 III {¶ 16} Appellant's assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). *Page 9 
The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
 SLABY, P. J., DICKINSON, J., CONCUR *Page 1